IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE: DMCA SUBPOENA TO NAMECHEAP, INC. | : CIVIL ACTION NO. 1:18-mc-0071<br>:<br>: JUDGE CHRISTOPHER A. BOYKO<br>:<br>: MEMORANDUM OF NAMECHEAP,<br>: INC. AND ITS COUNSEL JENNIFER<br>: SUAREZ, EUGENE ROME, AND<br>: SRIDAVI GANESAN IN<br>: OPPOSITION TO AARON<br>: GREENSPAN'S MOTION FOR<br>: CONTEMPT SANCTIONS<br>: |

_____

Namecheap, Inc. ("Namecheap") and its counsel Jennifer Suarez, Eugene Rome, and Sridavi Ganesan, hereby oppose Aaron Greenspan's ("Mr. Greenspan") Motion for Contempt Sanctions ("Motion") (Dkt. No. 2).

**I.    INTRODUCTION**

This miscellaneous action concerns a Digital Millennium Copyright Act ("DMCA") subpoena issued by the above-referenced Court at the request of Mr. Greenspan that was directed to Namecheap ("Subpoena"). The Motion seeks sanctions against Namecheap and its in-house and outside counsel for purportedly willfully refusing to comply with the Subpoena. However, as Mr. Greenspan's own moving papers, supporting exhibits, and defective Subpoena demonstrate, the Motion should be denied and is an unwarranted and an overzealous attempt by a highly litigious individual to punish Namecheap and its counsel for not complying with his unreasonable demands, even if this Court does not have jurisdiction to impose sanctions against

1

Namecheap or any of its attorneys, and Namecheap has a valid excuse for not complying with the Subpoena.[1]

First, the Subpoena is defective as the place of compliance is further than the 100-mile limitation from Namecheap's offices prescribed by Federal Rule of Civil Procedure ("FRCP") 45(c).

Second, the Court lacks jurisdiction to impose sanctions against Namecheap or any of its attorneys as only a court within the district of a *valid* place of compliance may issue sanctions for failing to comply with a subpoena.

Third, service of the Subpoena was defective because no attempt was made to personally serve the Subpoena on Namecheap, and Namecheap did not consent to accept service of the Subpoena by email.

Fourth, the Motion is moot because Namecheap's in-house counsel informed Mr. Greenspan within minutes of receiving his email with the Subpoena that Namecheap did not retain and have access to the information sought by the Subpoena, and therefore did not have any documents to produce. Further, service was only effective on August 6, 2018, and Namecheap's outside counsel served a formal response and objections to the Subpoena within a reasonable time thereafter.

Fifth, Namecheap is excused from complying with the Subpoena because the information is electronically stored in an inaccessible location, and to obtain the information would require

---

[1] Indeed, Mr. Greenspan is a serial litigant before the federal courts and is therefore familiar with its procedures. Among his many lawsuits, Mr. Greenspan has sued the Administrative Office of the United States Court, U.S. District Court of the Northern District of California, and the American Bar Association (Case No.5:14-cv-02396-JTM); and Random House Publishing and Columbia Pictures Industries, Inc. (Case No 1:11-cv-12000-RBC). Mr. Greenspan did not prevail in any of his legal actions.

Namecheap to engage in a criminal act and breach its agreements with its customer(s), therefore causing undue burden to Namecheap.

For these reasons, and as demonstrated further below, the Motion should be denied.[2]

## II.  FACTUAL BACKGROUND

On April 24, 2018, Mr. Greenspan wrote Rome & Associates, A.P.C., an outside counsel of Namecheap, regarding negative posts made on a website made by a Namecheap customer about Mr. Greenspan and his family. Declaration of Sridavi Ganesan ("Ganesan Decl."), ¶ 3 (attached as Exhibit 1). Apparently, Mr. Greenspan obtained this counsel's information from identifying it through prior litigation handled by the law firm for Namecheap. *Id*. Mr. Greenspan claimed that he had a Temporary Restraining Order ("TRO") against this Namecheap customer and attached it to his email. *Id*., Exh. A. <u>*The TRO specifically excluded any restraint on the individual from posting anything about Mr. Greenspan, his family or his business activities on the internet*</u>. *Id*.

Rome & Associates, A.P.C. remitted Mr. Greenspan's e-mails to Namecheap's legal response unit as it was not then authorized to deal with the matter on Namecheap's behalf. Apparently, based on the language of the TRO and Namecheap's own investigation, Namecheap declined to remove the content at issue. *Id*. On May 22, 2018, Sridavi Ganesan communicated this response to Mr. Greenspan. *Id*. at ¶ 4, Ex. B.

On July 24, 2018, Mr. Greenspan emailed Ms. Ganesan a copy of the Subpoena directed at Namecheap. Ms. Ganesan's firm did not have authority to accept service of the Subpoena at that time and was not retained to represent Namecheap in this new legal matter. Ms. Ganesan directed Mr. Greenspan to contact Namecheap's legal department. *Id*. at ¶ 5.

---

[2] Namecheap and its counsel Jennifer Suarez, Eugene Rome, and Sridavi Ganesan reserve all rights to seek recovery of their attorneys' fees and any further relief against Mr. Greenspan under the civil rules and applicable law, including but not limited to FRCP 45(d)(1).

Thereafter, Mr. Greenspan emailed Namecheap's legal department attaching the Subpoena to the email. The email did not request Namecheap to accept service of the Subpoena. *See* Dkt. No. 2-2, at 6. Namecheap's in-house counsel, Jennifer Suarez, responded in an email to Mr. Greenspan explaining that Namecheap did not collect and have access to the information requested, and therefore could not produce any documents responsive to the Subpoena. *See Id*. at 7, 19, 22. Mr. Greenspan disputed this contention. *See Id*. at 8, 20, 24.

On August 6, 2018, Mr. Greenspan wrote to Namecheap asserting that it was in violation of the Subpoena for failing to respond. Ms. Ganesan wrote to Mr. Greenspan stating that her firm was retained to handle this matter on behalf of Namecheap, that Namecheap did not have any record of being served with the Subpoena at its offices, and that she would be willing to accept service of the subpoena on Namecheap's behalf over email. Ganesan Decl., ¶ 6. Ms. Ganesan requested until August 17, 2018 (i.e. eight (8) business days) to respond to the Subpoena. *Id*. at ¶ 7. Mr. Greenspan unreasonably stated that he would only give her until August 10, 2018 (i.e. three (3) business days) to respond to the Subpoena, or he will bring the instant Motion. *Id*.

On August 13, 2018, Mr. Greenspan filed the Motion. On August 16, 2018, Namecheap served a response to the Subpoena stating that the information sought was located on a server dedicated to and managed by the website operators(s) of the domains listed in the Subpoena, and that the server(s) is/are password protected by the website operator(s) and not accessible by Namecheap. *Id*. at ¶ 8, Exh. C.

On August 17, 2018, Mr. Greenspan wrote to Ms. Ganesan demanding that Namecheap reset the password to the server(s) in question, and threatening to seek "further sanctions of

4

$10,000.00 per day of non-compliance and incarceration of you, Eugene Rome, Jenn Suarez, and Richard Kirkendall until such time as the documents requested are produced." *Id*. at ¶ 9, Exh. D.

During the period commencing with Mr. Greenspan's initial contact with the Rome & Associates firm, Mr. Greenspan made telephone calls to counsel threatening to refer Eugene Rome and his colleagues to the State Bar and promising other sanctions due to their client's claimed refusal to respond to his demands. *Id*. at ¶ 10.

### III.     ARGUMENT

#### A.     The Subpoena is Defective Because the Place of Compliance Is Improper

FRCP 45(c) requires the place of compliance of a subpoena to be "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Here, the Subpoena commanded Namecheap to serve the subpoenaed records at an address in Shaker Heights, Ohio.[3]  *See* Dkt No. 1-1.  Namecheap's offices are located in Phoenix, Arizona, the Subpoena incorrectly lists Namecheap's prior address in Los Angeles, California.  *See Id*.; Dkt. No. 2-2 at 22.  As Namecheap's offices are located in Phoenix, the place of compliance of the Subpoena (i.e. Shaker Heights, Ohio) falls beyond the 100-mile limitation proscribed by FRCP 45(c).

As such, the Subpoena is facially defective.

#### B.     The Court Lacks Jurisdiction to Impose Sanctions Over Namecheap and Its In-House and Outside Counsel

Mr. Greenspan brings this Motion pursuant to FRCP 45(g) which states that "<u>*the court for the district where compliance is required*</u> …may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." (emphasis

---

[3] Mr. Greenspan lives in Northern California, so it is unclear why he has chosen Northern District of Ohio as his choice of venue.

5

added).  As stated above, the Subpoena is defective for requiring compliance at a location in Shaker Heights, Ohio – well beyond the 100-mile limitation set forth in FRCP 45(c).  Namecheap's offices are located in Phoenix, Arizona, making the appropriate court in the district *where compliance would have been valid* the United States District Court for the District of Arizona, not this Court.  As the location for compliance pursuant to the Subpoena was improper to begin with, this Court lacks jurisdiction to impose sanctions against Namecheap and its in-house and outside counsel with respect to non-compliance of the Subpoena.

        **C.**        **The Subpoena Was Not Properly Served Prior to August 6. 2018**

FRCP 45(b)(1) states that a subpoena must be served by "delivering a copy to the named person..."  Fed. R. Civ. P. 45(b)(1). While the Sixth Circuit has not addressed whether FRCP 45 requires personal service, the Fifth, Ninth, and D.C. Circuits have held that personal service is required. *Robertson v. Dennis (In re Dennis),* 330 F.3d 696, 704 (5th Cir.2003) ("[T]he rule indicates that proper service requires not only personal delivery of the subpoena, but also tendering of the witness fee and a reasonable mileage allowance."); *Chima v. United States Dep't of Defense,* 23 Fed.Appx. 721, 724 (9th Cir.2001) (unpublished) (concluding that district court did not err when it failed to compel individuals, who were recipients of subpoenas from the plaintiff, to comply with subpoenas and attend trial, where subpoenas were served by mail rather than personal service); *FTC v. Compagnie De Saint–Gobain–Pont–A–Mousson,* 636 F.2d 1300, 1312–13 (D.C.Cir.1980).

Moreover, the majority of lower courts also have held that FRCP 45 requires personal service. *Heilman v. Lyons,* No. 09–cv–2721, 2011 WL 94541, *1 (E.D. Cal. Jan. 11, 2011) (Newman, Mag. J.); *Mahar v. U.S. Xpress, Inc.,* No. 06–cv–1297, 2010 WL 4365885, *1 (N.D.N.Y. Oct. 28, 2010); *Nunn v. State Farm Mut. Auto. Ins. Co.,* No. 3:08–cv–1486, 2010 WL

4258859, *1 (N.D. Tex. Oct. 21, 2010); *Taylor v. CountrywideHome Loans,* No. 08–13258, 2009 WL 1913417 at *5 (E.D. Mich. June 30, 2009) (Hluchaniuk, Mag. J.); *McClendon v. TelOhio Credit Union, Inc.,* No. 2:05–CV–1160, 2006 WL 2380601, at *2 (S.D. Ohio Aug. 14, 2006) (Kemp, Mag. J.); *Hall v. Sullivan,* 229 F.R.D. 501, 502 (D.Md.2005) (Grimm, Mag. J.) (recognizing that a majority of courts requires personal service of subpoenas under Rule 45).

Mr. Greenspan does not claim that he personally served or attempted to personally serve the Subpoena to Namecheap, only that any effort to serve was made over email. <u>Moreover, Mr. Greenspan concedes that email service requires consent by the party being served</u>. *See* Dkt. 2-1 at 9-10. Yet, the emails submitted in support of the Motion show that Mr. Greenspan never asked Namecheap to accept service of the Subpoena over email and that Namecheap did not agree to accept email service of the Subpoena. Dkt. 2-2 at 3, 5-7, 19, 22. In fact, Mr. Greenspan's email in forwarding the Subpoena to Namecheap and Ms. Ganesan read as if he was providing a courtesy copy of the same, rather than service of a legal document. *See Id.*at 3, 6. Pursuant to FRCP 45, such service is not proper, particularly where Ms. Ganesan (who was not representing Namecheap on this matter at that time) lacked authority to accept service of the Subpoena when it was emailed to her, and where Namecheap did not agree to accept service of the Subpoena by email.

For these reasons, service of the Subpoena was defective.

### D. The Motion is Moot and Sanctions Are Unwarranted

The Subpoena was properly served on Namecheap on August 6, 2018 when Ms. Ganesan agreed to accept email service of the same through email. Namecheap thereafter served its response to the Subpoena within eight (8) business days, on August 16, 2018, rendering the Motion moot.

7

Even if the Subpoena was properly served to Namecheap on July 24, 2018 as Mr. Greenspan asserts, the Motion is still moot because Mr. Greenspan received his response to the Subpoena within minutes of emailing it to Namecheap. Specifically, Namecheap's in-house counsel informed Mr. Greenspan that Namecheap does not collect or retain the information requested in the subpoena, and therefore has no documents responsive to the Subpoena. *See* Dkt. No. 2-2 at 7, 19, 22. Moreover, on August 16, 2018, Namecheap served through its counsel Objections and Responses to the Subpoena asserting the same response as Namecheap's in-house counsel, *i.e.*, that Namecheap does not retain and does not have access to the information sought by the Subpoena. Ganesan Decl., ¶ 8, Exh C. Given that Namecheap has responded to the Subpoena, both through its in-house and outside counsel, the Motion is moot and sanctions are unwarranted.

**E.     Namecheap Cannot Comply with the Subpoena Without Hacking into the Server**

On August 16, 2018, Namecheap served its response to the Subpoena by overnight mail to the address listed on the Subpoena. *Id*. The response stated that: "Namecheap is unable to comply with the Subpoena because the information sought is hosted on server(s) that is/are dedicated to and managed entirely by the website operator(s) of the domains listed on Exhibit "A" of the Subpoena. As such, the server(s) is/are password protected by the website operator(s) and not accessible by Namecheap." *Id*. If Mr. Greenspan wants the information he seeks, he would need to obtain that information directly from the website operator(s).

On August 17, 2018, Mr. Greenspan wrote to Ms. Ganesan demanding that Namecheap reset the password to the server(s) in question, and threatening to seek "further sanctions of

8

$10,000.00 per day of non-compliance and incarceration of you, Eugene Rome, Jenn Suarez, and Richard Kirkendall until such time as the documents requested are produced." *Id*. at ¶ 9, Exh. D.

FRCP 45(e) states a subpoenaed party "need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost."  Here, Namecheap is excused from producing the subpoenaed information not only because it is unduly burdensome to do so, but because providing that information would cause Namecheap to breach its agreement with its customer(s) and engage in a criminal act.  *Mr. Greenspan's threats to harm Namecheap and its in-house and outside counsel with sanctions, incarceration, and complaints to the applicable bar associations will not change these facts.*

While there is a way for a customer to change its own root password, this can only easily be done when the customer knows the password he/she wants to change.  Declaration of Matt Russell ("Russell Decl."), ¶ 5 (attached as Exhibit 2).  Given that the server(s) is/are password protected, and Namecheap does not have access to the password(s), what Mr. Greenspan is demanding of Namecheap amounts to hacking into its customer(s) server(s) to obtain the information sought in the Subpoena.  *Id*.  Not only is accessing the customer(s) dedicated server(s) without authorization a criminal act, but it is in violation of paragraph 14 of Namecheap's Web Hosting Terms of Service with its customer(s).  *See* 18 U.S.C. 1030(a)(2); *Id*. at ¶ 6, Exh. 1.  Moreover, the process for Namecheap to reset the password(s) is extreme, would lock the customer(s) out of the server, and may compromise the service features of the software and other services on the server(s), such as causing the server(s) to crash.  *Id*. at ¶¶ 7-9.

9

Mr. Greenspan's latest demands of Namecheap are, in short, extreme. No web hosting service that would resort to such action. Namecheap has never before been requested to perform such an act by a private litigant or a court of law. *Id*. at ¶ 7.

There is a less intrusive, non-criminal way to obtain the information sought by Mr. Greenspan, which is to seek it directly from the website operator(s) who have full control of that information, not Namecheap. *Id*. at ¶ 10. Notably, the Subpoena does not seek any information as to the identities of the website operator(s). Dkt. No. 1-1. Mr. Greenspan has not even demonstrated that he has attempted to procure the sought information from the actual account-holder. *Id*. Nor does he identify the person, which is a pre-requisite to seeking third party discovery. *Id*.

Given the dire and extreme consequences of complying with the Subpoena, the Court should deny the Motion and any Motion brought by Mr. Greenspan moving forward with respect to the enforcement of the Subpoena or sanctions against Namecheap's attorneys for not complying with Mr. Greenspan's unreasonable demands.

**IV. CONCLUSION**

For the forgoing reasons, the Court should deny the Motion.

Dated: August 27, 2018                                  Respectfully submitted,


                                                        /s/ Stephen A. Weigand
                                                        Stephen A. Weigand (0083573)
                                                        FARUKI IRELAND COX RHINEHART &
                                                        DUSING PLL
                                                        201 East Fifth Street, Suite 1420
                                                        Cincinnati, OH  45202
                                                        Telephone:  (513) 632-0306
                                                        Telecopier:  (513) 632-0319
                                                        Email:  sweigand@ficlaw.com

                                                        Attorneys for NAMECHEAP, INC., JENNIFER
                                                        SUAREZ, EUGENE ROME, AND SRIDAVI
                                                        GANESAN

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Memorandum of Namecheap, Inc. and its Counsel Jennifer Suarez, Eugene Rome, and Sridavi Ganesan in Opposition to Aaron Greenspan's Motion for Contempt Sanctions has been served via regular mail upon the following, this 27th day of August, 2018:

>Aaron Greenspan
>20560 Shelburne Road
>Shaker Heights, OH 44122-1941
>
>With a courtesy copy via email:
>Aaron Greenspan
>Email: aaron.greenspan@plainsite.org

/s/ Stephen A. Weigand
Stephen A. Weigand

12